In the Matter of the Accounting of KARL F. BREHM, as Administrator of the Estate of HAROLD C. BREHM, Deceased.

Fourth Department, June 25, 1971.

*Fuller, Giles, Maloney, Marsh & Goodwin* (*Thomas P. Goodwin* of counsel), appellant *pro se.*

*Stanford H. Waite*, special guardian for Elizabeth Brehm, respondent in person.

*Per Curiam.* Appellants, attorneys for the administrator of the Brehm estate, are appealing from the Surrogate's decree which fixed their allowance for legal services at $1,400, which is one half of the requested amount. The total amount of the estate is $76,375.70. Letters of administration were issued in December of 1967. Legal services were rendered the estate for about a year and a half, including all the regular matters, such as ascertaining the distributees and securing the appointment of the administrator, converting securities and other assets into cash, investigation and payment of debts, preparation and filing of Federal and State estate tax returns, preparation of final account, service of citations and all the usual legal procedures in administering an estate.

Approximately 10 months before filing the final account and before there had been any request for, or discussion about, attorneys' fees, the Surrogate wrote to appellants stating that it was "not the practice of this Court to approve attorney's fees in excess of the amount of a single executor's commission which in this instance would be in the neighborhood of $1,900, unless a full and complete affidavit of services is submitted". Appellants furnished a complete affidavit upon the final account and requested $2,800 for legal services. The distributees were half brothers and children of a deceased half brother. None of them objected to the requested allowance and the report of

the special guardian contained this statement: " The estate attorneys have requested the Court to allow a fee which I believe has been computed under the Jefferson County Bar Association minimum fee schedule ". Under the Bar schedule the fee would be $3,041.27. The allowance requested was $2,800 for services rendered prior to preparation of final account and $250 for the services rendered in preparing and filing the final account, plus the necessary disbursements. The decree of judicial settlement provided for payment of $1,074.79, the balance due after crediting advance of $900, to the administrator for commissions, $1,400 to appellants for services and $52.50 for disbursements, $300 to the administrator for appellants' services on the accounting plus $60 for their disbursements.

There is no hard and fast rule by which it can be determined what is reasonable compensation for an attorney in any given case (27 Carmody-Wait 2d, New York Practice, § 159:122). While SCPA 2110 (formerly Surrogate's Ct. Act, § 231-a) gives the Surrogate authority to hear applications and determine compensation for attorneys, the power must be exercised with reason, proper discretion and not arbitrarily. In determining the justice and reasonableness of attorneys' fees the rule was well expressed by this Department in *Matter of Potts* (213 App. Div. 59, affd. 241 N. Y. 593) by these guidelines at page 62: " In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." (Citing cases.) Applying this formula, we find that appellants' requested allowance was fair and reasonable and the Surrogate's order cutting the request by one half was an improvident exercise of discretion.

The Surrogate's decision, in his words, places undue emphasis on the " hours of time [which] were devoted to the estate ". The injustice of using time as the all-important yardstick is evident in this cogent statement from *Matter of Snell* (17 A D 2d 490, 494): " The timeclock approach, however necessary or appropriate in some fields, is, most certainly, not that to be exclusively employed in the case of high professional skills directed to complex problems involving, among many other factors, the acceptance of heavy responsibility, commensurate with the subject of the retainer, and the utilization of advanced education and long experience." Surrogate WINGATE succinctly put it in this language: " [in] the majority of cases, the court is unimpressed with the number of hours asserted to have been

expended in labor for the estate " (*Matter of Kentana,* 170 Misc. 663, 664). Skilled, long-experienced, conscientious attorneys, who are leading members of the Bar, such as appellants, can render the services in substantially less time, by reason of their expertise, than could other attorneys of lesser probate experience.

It is significant that no one has objected to the requested allowance. The Surrogate on his own has rejected the Minimum Bar Association Fee Schedule, the acquiescence of all of the distributees, and has even disregarded his own declared intention to limit the attorneys' compensation to " in the neighborhood of $1,900, unless a full and complete affidavit of services is submitted ".

Finding, as we do, that the requested fee is reasonable and proper, the decree should be modified, fixing the allowance for appellants' services and disbursements prior to the final account at $2,852.50, and the allowance for services and disbursements for the preparation and filing of the final account at $310, and as modified, the decree should be affirmed.

GOLDMAN, P. J., DEL VECCHIO, MARSH, WITMER and MOULE, JJ., concur.

Decree unanimously modified on the law and facts in accordance with the opinion and as so modified affirmed, with costs to appellant, *pro se,* payable out of the estate.