[781 NYS2d 360]

In the Matter of MIRAL PLOVNICK, Respondent, v AVI KLINGER, Appellant. BRUCE J. COHEN, Nonparty Respondent.

Second Department, July 30, 2004

## APPEARANCES OF COUNSEL

*Russell I. Marnell, P.C.*, East Meadow (*Scott R. Schwartz* of counsel), for appellant.

*Carol Lewisohn*, Cedarhurst, for respondent.

*Bruce J. Cohen*, Jericho, *Law Guardian*, nonparty-respondent pro se.

## OPINION OF THE COURT

KRAUSMAN, J.

Family Court Act § 249 provides the court with the discretion to appoint law guardians to represent children in a variety of proceedings, including custody disputes. Although the appointment of law guardians in custody cases is not mandatory, the practice has become increasingly widespread, as courts seek to ensure that children have independent counsel to represent their interests in proceedings which have a profound impact upon their lives. With the increased frequency of appointments, questions have arisen as to the manner in which law guardians can be compensated. In many instances, attorneys appointed as law guardians in custody matters are selected from an approved panel, and compensated by the State at the rates set forth in Judiciary Law § 35 (3). However, in some instances, where the parents have sufficient financial means, the courts have ordered one parent or both parents to pay the law guardian's fees. On this appeal, the father challenges the Family Court's authority to direct him to pay the fees of the Law Guardian appointed to represent his son, and we are asked to determine whether there is statutory authority to require a parent to pay a law guardian's fees in Family Court custody proceedings. For the reasons which follow, we conclude that the Family Court was authorized to direct the father to pay the Law Guardian's fees, and that the order appealed from should be affirmed.

We note that the order dated December 10, 2002, is not appealable as of right, however, we treat the notice of appeal as an application for leave to appeal and grant leave (*see* Family Ct Act § 1112).

The parties in this proceeding are the parents of Jordan, who was born on April 26, 1995, and is now nine years old. On April

21, 1999, the parties entered into a stipulation settling their pending divorce action. Under the terms of the stipulation, the mother was awarded custody of Jordan, and the father was granted visitation on alternate weekends, two week night evenings, and specified holidays. The stipulation further required the father, who earned 85% of the couple's income, to pay child support in the sum of $710 per month in accordance with the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]). The stipulation was incorporated, but not merged, in the ensuing judgment of divorce entered September 3, 1999. Both parents remarried shortly after their divorce.

Eleven months later, in August 2000, the father sought a change of custody in the Supreme Court, Nassau County. In November 2000, the Supreme Court issued separate orders directing a hearing on the father's application, and appointing counsel to serve as Jordan's law guardian. The order appointing counsel for Jordan required the father to pay the law guardian's fees at a rate of $150 per hour. Following extensive negotiations, on April 25, 2001, the parties entered into a stipulation in which they agreed to share custody of Jordan. The April 2001 stipulation set forth a comprehensive schedule for dividing physical custody of Jordan between the parents.

Approximately seven months later, in December 2001, the mother filed a pro se petition in the Family Court, Nassau County, seeking sole custody of Jordan. In her petition, the mother alleged that the shared custodial arrangement had proved unworkable because of animosity and a lack of communication between the parties. When the parties made their first appearance in Family Court on the mother's petition, the Family Court questioned the mother about her financial circumstances, and then appointed counsel to represent her. The Family Court also assigned the same attorney who previously represented Jordan in the Supreme Court custody matter as the child's law guardian.

When the Law Guardian made his first appearance before the Family Court in March 2002, he advised the court that when he represented Jordan in the Supreme Court, the father was directed to pay his fees at a rate of $150 per hour. The Law Guardian then requested that he be compensated in the same manner for his representation of Jordan in the Family Court. The father's attorney opposed the application, arguing that the Family Court lacked jurisdiction to require a party to pay a law guardian's fees.

At the Family Court's direction, after making an oral application on the record in open court to direct the father to pay his fees, the Law Guardian submitted a written application to direct the father to pay his fees at the rate of $150 per hour. In support of his application, the Law Guardian argued that Judiciary Law § 35 (3), which primarily governs the compensation of attorneys appointed to represent indigent parties, also permitted the court, in the interest of justice, to require a litigant who was not indigent to pay reasonable fees to a law guardian assigned to represent his or her child. The Law Guardian further argued that the father had sufficient financial means to pay his fees, and that Jordan was "entitled to a law guardian with experience and expertise who should be paid at a commensurate rate for the reasonable value of his services." In opposition, the father argued that a law guardian appointed in Family Court was required to be compensated in accordance with Judiciary Law § 35 (3), and maintained that this provision solely authorized payment to be paid from public funds at a rate which was then $40 per hour for time expended in court, and $25 per hour for time expended out of court. The father further argued, relying upon the decision of the Appellate Division, Fourth Department, in *Matter of Lynda A.H. v Diane T.O.* (243 AD2d 24 [1998]), that the Family Court, as a court of limited jurisdiction, did not have inherent authority to exercise powers beyond those expressly granted to it by statute.

After conducting a brief hearing, the Family Court granted the Law Guardian's application, and ordered the father to pay his fees at the rate of $150 per hour. The father now appeals, challenging the Family Court's authority to direct a litigant such as himself to pay fees to the law guardian appointed to represent his child. In support of his position, the father continues to rely upon *Matter of Lynda A.H. v Diane T.O.* (*supra*). *In Matter of Lynda A.H.,* the Appellate Division, Fourth Department noted that the Family Court is a court of limited jurisdiction which is prohibited from exercising powers beyond those granted to it by statute, and determined that there was no statutory authority to compel parties to pay a law guardian's fees. Although this Court has previously affirmed Family Court orders directing parties to pay a law guardian's fees (*see e.g. Rosenbaum v Rosenbaum,* 270 AD2d 242 [2000]; *Matter of Bungay v Morin,* 256 AD2d 462 [1998]; *Matter of Department of Social Servs. [Wolfson] v Wolfson,* 228 AD2d 594 [1996]), and recently observed that the Family Court has the authority to

award a reasonable fee to a law guardian (*Matter of Campo v Campo,* 3 AD3d 565 [2004]), we now take the opportunity to explain the rationale for our divergence from the Appellate Division, Fourth Department's view.

We begin our analysis of this issue by considering the statutory framework for the appointment and compensation of law guardians in Family Court. Pursuant to Family Court Act § 249, the appointment of law guardians is mandatory in certain proceedings, including juvenile delinquency proceedings, child protective proceedings, and termination of parental rights proceedings. Family Court Act § 249 also gives the Family Court the discretion to appoint law guardians in a variety of other Family Court proceedings. In this regard, Family Court Act § 249 (a) provides that "[i]n any other proceeding in which the court has jurisdiction, the court may appoint a law guardian to represent the child, when, in the opinion of the family court judge, such representation will serve the purposes of this act." While the appointment of a law guardian in a contested custody proceeding is not mandatory, we have recognized that such an appointment is appropriate and helpful to the court, since the law guardian "may act as champion of the child's best interest, as advocate for the child's preferences, as investigator seeking the truth on controverted issues, or may serve to recommend alternatives for the court's consideration" (*Koppenhoefer v Koppenhoefer,* 159 AD2d 113, 117 [1990]).

The Family Court Act also authorizes the Appellate Divisions of the Supreme Court to designate a panel of qualified attorneys to provide law guardian services (*see* Family Court Act § 243 [c]). Where such a panel is established, as is the case in this judicial department, Family Court Act § 245 (c) provides that "law guardians shall be compensated and allowed expenses and disbursements in the same amounts established by subdivision three of section thirty-five of the judiciary law." Judiciary Law § 35 governs the "[a]ssignment of counsel to indigent persons," and subdivision (3) of the statute, which establishes the terms of compensation for assigned counsel, was recently amended to increase the compensation rates to $75 per hour for time expended in court and for time reasonably expended out of court. Although the focus of subdivision (3) is clearly upon the compensation of assigned counsel for indigent litigants from public funds, it also provides that whenever it appears that the person who has been assigned counsel *"is financially able to obtain counsel or make partial payment for the representation,*

*counsel may report this fact to the court and the court may terminate the assignment or authorize payment, as the interests of justice may dictate.''* (Emphasis added.) Thus, Judiciary Law § 35 (3) allows the court to utilize an alternative method to compensate attorneys who have been assigned to represent individuals with the financial ability to retain counsel. Although we recognize that a child is not ordinarily a person who is ''financially able to obtain counsel or make partial payment for the representation,'' Family Court Act § 245 (c) specifies that law guardians are to be compensated in accordance with Judiciary Law § 35 (3). We are thus persuaded that the alternative method for compensation of attorneys permitted by Judiciary Law § 35 (3) vests the Family Court with authority to require litigants, who are financially able to do so, to make full or partial payment of fees to the law guardians assigned to represent their children in custody proceedings. While the ability to assign counsel who can be compensated from public funds helps ensure that independent advocates are available to children in emotionally charged custody disputes, the interests of justice do not dictate that payment must, in all cases, be made from public funds. Indeed, it has been observed that ''[t]o provide publicly funded legal representation to individuals with an ability to afford their own counsel makes no sense'' (*Colangelo v Colangelo,* 176 Misc 2d 837, 842 [1998]). Thus, where the interests of justice so dictate, the Family Court, pursuant to Judiciary Law § 35 (3), may direct that a parent who has sufficient financial means to do so pay some or all of the law guardian's fees.

We note that the practice of directing parents to pay a law guardian's fees in custody matters appears to be more prevalent in the Supreme Court, where the court similarly has the option of directing compensation from public funds pursuant to Judiciary Law § 35. This Court, as well as the Appellate Divisions, First and Third Departments, have upheld the practice of requiring parties to pay law guardian fees in custody proceedings initiated in the Supreme Court (*see e.g. Rupp-Elmasri v Elmasri,* 8 AD3d 464 [2d Dept 2004]; *Pascarelli v Pascarelli,* 283 AD2d 472 [2001]; *Stephens v Stephens,* 249 AD2d 191 [1998]; *Gadomski v Gadomski,* 245 AD2d 579 [1997]; *Bronstein v Bronstein,* 203 AD2d 703 [1994]). We perceive no basis for creating a disparity between the Family Court and the Supreme Court in custody matters by holding that only the Supreme Court is permitted to depart from the public payment scheme for assigned law guardians. Indeed, we have previously held that in

matters of custody, the Family Court has the same powers possessed by the Supreme Court, which includes the authority to award counsel fees (see *Matter of O'Neil v O'Neil*, 193 AD2d 16 [1993]). Since the Supreme Court and the Family Court share concurrent jurisdiction over custody proceedings, both courts should have the ability to direct parents to pay law guardian fees in appropriate circumstances.

Authority to require a parent to pay a child's legal expenses also flows from the statutory duty to support a child under the age of 21 (see Family Ct Act §§ 413, 416), which encompasses a duty to provide necessaries. While necessaries have traditionally been defined to include a child's most basic needs, such as food, clothing, shelter, and medical care, in appropriate circumstances the duty to provide necessaries may obligate a parent to provide a child with counsel (see *Matthews v Matthews*, 30 Misc 2d 681 [1961], *mod on other grounds* 18 AD2d 830 [1963], *affd* 14 NY2d 778 [1964]; *People v Kearns*, 189 Misc 2d 283 [2001]; *Matter of Cheri H.*, 121 Misc 2d 973 [1983]; *see also Colangelo v Colangelo, supra*). Indeed, it has been stated that "[t]he unemancipated child without means who has been provided with necessaries may reasonably look to his [parent(s)] to bear the full responsibility for the costs thereof without regard to the fact that free legal services *may be* available to indigents" (*Fanelli v Barclay*, 100 Misc 2d 471, 475 [1979]). The provision of legal services to a child as a necessary was recognized by the Appellate Division, First Department in *Matter of Baby U.* (263 AD2d 385 [1999]), where an infant's birth parents sought to set aside their extrajudicial consents to his adoption. The First Department concluded that the birth parents failed to demonstrate a basis to void their consents, and remitted the matter to the Family Court for a best interests hearing. In remitting the matter, the First Department observed that "Baby U. did have a right to be represented in these proceedings and, on remand, a Law Guardian must provide those services as necessaries to be subsequently compensated in such manner as the Family Court may determine" (*Matter of Baby U., supra* at 388). A parent's potential duty to pay for legal services provided to a child as necessaries was also recognized by the Court of Appeals in *Felder v Mohr* (39 NY2d 1002 [1976]). In that case, the Court of Appeals affirmed an order dismissing an attorney's action against a father to recover legal fees upon the ground that the father provided the mother, who was the custodial parent, with an adequate and sufficient level of child support. However, the Court

of Appeals noted that an attorney might be able to recover the necessary value of legal services provided to a child "in a proper case" (*Felder v Mohr, supra* at 1003).

We additionally note that where, as here, the court has elected to exercise its authority to direct one or both parents to pay the law guardian's fees, it may establish a reasonable hourly fee which exceeds the statutory rates set forth for the representation of indigent parties in Judiciary Law § 35 (3). In this regard, it has been observed that the below market rate fee schedule set forth in Judiciary Law § 35 (3) comprises reduced rates to be paid by the State as a means of providing legal assistance to indigent litigants, and that "[t]here is no basis for nonindigent private parties to have their litigation subsidized at bargain rates" (*C.E. v P.E.,* 177 Misc 2d 272, 275 [1998]; *see Stephens v Stephens, supra*). However, if a parent who has been directed to pay a fee contests a law guardian's claims relative to the time expended and the reasonable value of the services provided, he or she should be afforded a hearing on this issue (*see Matter of Campo v Campo,* 3 AD3d 565 [2004], *supra; Gadomski v Gadomski,* 245 AD2d 579 [1997], *supra*).

The father alternatively argues on appeal that if the Family Court is empowered to compel litigants to pay law guardian fees, the mother should be required to contribute to this expense. While we agree that both parents have an equal responsibility to provide counsel for their child if they can afford to do so, we note that the mother commenced this proceeding pro se and the Family Court assigned counsel to represent her after determining that her financial circumstances were such that she was unable to retain counsel. Under these circumstances, the Family Court did not err in requiring the father to pay the full cost of providing Jordan with legal representation. The father's remaining contentions are without merit.

Accordingly, the order dated December 10, 2002, is affirmed, with costs.

ALTMAN, J.P., ADAMS and TOWNES, JJ., concur.

Ordered that on the court's own motion, the notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* Family Ct Act § 1112); and it is further,

Ordered that the order dated December 10, 2002, is affirmed, with costs.